# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**LYLE MOODY,**

    **Plaintiff,**

**v.**                                                          **USDC Civ. No. 18-1189 JB/KK**

**DOLLAR TREE STORE 2967,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court[1] on the Motion and Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, filed December 21, 2018. (Doc. 5.) Plaintiff filed a response on January 11, 2019. (Doc. 14.) And Defendant filed a reply on January 28, 2019. (Doc. 15.) While this Motion was pending, Plaintiff filed a pleading on June 14, 2019, titled "Plaintiff's Motion to Dismiss Without Prejudice or, in the Alternative, to Transfer Plaintiff's Case to State District Court. Plaintiff Also Alleges a Willingness to Reduce Damages to Seventy-Five Thousand Dollars" (Plaintiff's Motion to Dismiss). (Doc. 18.) On June 27, 2019, Defendant filed a Response, opposing Plaintiff's Motion to Dismiss. (Doc. 20.) Plaintiff's Motion, and Defendant's Response are also considered herein. The Court has reviewed the parties' submissions, the record, and the relevant law and for the reasons that follow, recommends that the Court GRANT Defendant's Motion to dismiss, and deny as moot Plaintiff's Motion to Dismiss.

## I.     Background

---

[1] An Order of Reference filed February 13, 2019 (Doc. 17), the presiding judge referred this matter to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of Defendant's Motion.

1

The following facts taken from Plaintiff's Complaint are accepted as true. In May 2018 Plaintiff was shopping at Dollar Tree Store # 2967 in Albuquerque, New Mexico. (Doc. 1-2 at 6.) Plaintiff approached the first cash register, where he encountered a "female cashier" (identified in Plaintiff's Reply as "Audrey"). (Doc. 1-2 at 7.) Combined, the items that Plaintiff sought to purchase cost five or six dollars. (Id.) Plaintiff told the cashier that he wanted to pay cash for two of the items and pay for the remaining items with his debit card. (Doc. 1-2 at 7.) Plaintiff tried to give the cashier a twenty-dollar bill for the two items, but instead of accepting the bill, the cashier "stared at . . . Plaintiff in anger." (Id.)

Plaintiff could see that something was wrong, and as the cashier continued to stare at him, he told her that he would go to the next register. (Id.) The cashier responded by "yelling and screaming 'Get out of here!'" (Id.) When Plaintiff asked the cashier what he had done to anger her, she "shouted 'I am the manager get out of here!'" and pointed at the front door indicating that Plaintiff should leave the store. (Id. at 4, 7) Plaintiff requested a grievance form, but his request was refused (by whom it is not clear). (Id. at 7.) Fearing that something else would go wrong, Plaintiff left the store. (Id.)

> Plaintiff alleges, further, that he
> 
> believes that this action by the female employee was not an extraordinary circumstance and contends that this was just a simple transaction gone wrong. Plaintiff also believes the female cashier was unlawfully disrespectful and[] unnecessarily[] unprofessional and did violate Plaintiff's protected class and age status[2] on the part of the Dollar Tree Store's management.

(Doc. 1-2 at 7.)

Based on these events, Plaintiff *pro se* filed a "Civil Complaint" in the Second Judicial District Court, County of Bernalillo, State of New Mexico. (Doc. 1-2 at 3.) Pursuant to 28

---

[2] Plaintiff's New Mexico Human Rights Bureau Charge Questionnaire, attached as an exhibit to Defendant's Reply reflects that Plaintiff is black and, was 68 years old at the time of the incident at issue. (Doc. 15 at 6.)

U.S.C. § 1332, Defendant[3] removed the matter to this Court on the basis of diversity jurisdiction—noting that Plaintiff is a citizen of the State of New Mexico, and Defendant is incorporated and has its principal place of business in the Commonwealth of Virginia, and the amount in controversy is in excess of $75,000 because Plaintiff is seeking $135,000 in damages. (Doc. 1 at 2.)

In his Complaint, Plaintiff seeks to recover $135,000 in damages based on (1) NMSA 1978, Section 57-12-3, prohibiting unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce (Doc. 1-2 at 1); (2) NMSA 1978, Section 28-1-7(F) prohibiting any person in any public accommodation from refusing to offer its services to any person based, in relevant part, on the person's race (Doc. 1-2 at 4, 6); and (3) a theory of prima facie tort (Doc. 1-2 at 5.)

Defendant seeks dismissal of Plaintiff's Complaint pursuant to Federal Rule of Procedure 12(b) on the grounds that (1) Plaintiff's NMHRA claim must be dismissed under Rule 12(b)(1) for lack of jurisdiction because Plaintiff failed to exhaust his administrative remedies, and (2) Plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim. (Doc. 5 at 1.) For the reasons discussed in the proceeding section, the Court concludes that Plaintiff's NMHRA claim should be dismissed for lack of jurisdiction, and that Plaintiff's prima facie tort claim and his UPA claim should be dismissed for failure to state a claim. Because the Court recommends dismissing this matter pursuant to Defendant's Motion, the Court recommends, further, that Plaintiff's Motion to Dismiss should be denied.

## II. ANALYSIS

### A. Plaintiff's NMHRA Claim Should be Dismissed Pursuant to Rule 12(b)(1)

---

[3]Defendant indicates in its Motion that it is improperly named in the Complaint and should be identified as "Dollar Tree Stores, Inc." (Doc. 5 at 1.)

### 1. Legal Standards Governing Dismissal Under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). Generally, a plaintiff may satisfy this pleading standard by alleging generally that the jurisdictional prerequisites have been satisfied. Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). But if the defendant challenges the court's jurisdiction, the plaintiff has the burden to show "by a preponderance of the evidence" that the Court has subject matter jurisdiction over his claim. *Celli*, 40 F.3d at 327; *Michelson v. Enrich Intern., Inc.*, 6 F. App'x 712, 716 (10th Cir. 2001) ("When a Rule 12(b)(1) motion challenges . . . a complaint's jurisdictional allegations, the plaintiff must present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."). "Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Federal Rule of Civil Procedure 12(b)(1) empowers the Court to dismiss a claim for lack of subject matter jurisdiction.

### 2. The Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's NMHRA Claim

Under the NMHRA, it is an unlawful discriminatory practice for any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services . . . or goods to any person because of race[.]" NMSA 1978, § 28-1-7(F).[4] While an aggrieved person may file a lawsuit to vindicate his rights under the NMHRA, before doing so,

---
[4] The "public accommodation" provision of the NMHRA does not encompass age discrimination. NMSA 1978, § 28-1-7(F).

4

"the putative plaintiff must exhaust a detailed grievance and administrative reconciliation process set out in the NMHRA and administered by the Human Rights Commission." *Williams v. Mann*, 388 P.3d 295, 300 (N.M. Ct. App. 2016). Of relevance here, the first step in the NMHRA grievance process is a requirement that the aggrieved person file a complaint with the human rights division of the labor department within three hundred days after the alleged unlawful discriminatory act was committed. NMSA 1978, § 28-1-10(A). The New Mexico Supreme Court and the New Mexico Court of Appeals "have consistently held that full compliance with NMHRA grievance procedures is a prerequisite for filing an NMHRA claim in district court." *Mitchell-Carr v. McLendon*, 980 P.2d 65, 70 (N.M. 1999) (alterations omitted). Thus, this Court's jurisdiction over a claim brought under the NMHRA is contingent upon a plaintiff's satisfactory compliance with the grievance process, and the Court must dismiss an NMHRA claim as to which this requirement has not been satisfied. *Id.*

In response to Defendant's argument that his NMHRA claim must be dismissed for failure to exhaust the grievance process, Plaintiff argues that he "appealed to the Human Rights Bureau" in November 2018 by speaking with a representative of the Bureau about his complaint. (Doc. 14 at 1.) Plaintiff argues that by this "appeal[]" he satisfied the exhaustion requirement, and since he "cannot be held responsible for the actions of the Human Rights Bureau" the Court has jurisdiction over his claim. (Id.) Additionally, in an ostensible attempt to satisfy his obligation to submit evidence demonstrating that he exhausted his administrative remedies, Plaintiff attached to his Response a letter that he wrote to Dollar Tree Store # 2967 captioned "This Notice Of Civil Complaint Against Dollar Tree Store # 2967, By Mr. Lyle Moody Is Proving his Exhaustion of Administrate Remedies: And Is Proceeding Under Rule 12(8)(6), Section 28-1-10 Rist v. Design Ctr. At Floor Concepts, 2013-NMCA-109." (Doc. 14 at 3.) In

the letter, Plaintiff informs "Dollar Tree Store Management" "of his intent to sue them, as required under the exhaustion of his administrative remedies in order to proceed in court." (Id.) Consistent with the allegations in the Complaint, Plaintiff's letter relates that the events at issue occurred in May 2018. (Id.)

However, Plaintiff's letter, and the corresponding allegations in his Complaint concerning the date on which the incident occurred conflict with documents from the New Mexico Human Rights Bureau which are attached as an exhibit to Defendant's Reply.[5] To that end, a "New Mexico Human Rights Bureau Questionnaire" reflects that on September 7, 2018 Plaintiff reported to the Human Rights Bureau that "sometime in May 2017" Plaintiff "went into dollar tree and the cashier . . . told him she would not take his money." (Doc. 15 at 7.) The Questionnaire reflects, further, that the Bureau advised Plaintiff that it would not accept the complaint because the incident occurred more than three hundred days before he reported it. (Id.) A letter to Plaintiff from the Staff Manager at the Human Rights Burau confirms the same.[6] (Doc. 15 at 5.)

---

[5] "[A] 12(b)(1) motion . . . can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion. . . . A court has wide discretion to allow affidavits [and] documents . . . to resolve disputed jurisdictional facts under 12(b)(1)." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Consistent with this principle, the Court considers Plaintiff's letter and the documentation from the Human Rights Bureau in resolving the motion to dismiss.

[6] In substantive part the letter, addressed to Plaintiff states:

> The Human Rights Bureau has contacted you several times. The last date of harm you indicated (around May 2017 as you don't remember the exact date) when we spoke, is more than 300 days prior to the date the Bureau contacted you.
>
> Section 28-1-10(A) of the New Mexico Human Rights Act specifies that all complaints must be filed with the Human Rights Bureau within three hundred (300) days after the alleged discriminatory act was committed. Based on this time limit we cannot accept this case.
>
> (Doc. 15 at 5.)

In sum, Plaintiff's Complaint and the letter that he attached to his Reply indicate that the act of discrimination at issue in the Complaint occurred in May 2018, but the documentation from the Human Rights Bureau indicate that Plaintiff complained of an incident that occurred in May 2017. Except for the year, the incident described in Plaintiff's Complaint and his letter to the Dollar Tree Store Management and that described in the Human Rights Bureau Questionnaire are so similar that it appears that Plaintiff either mistakenly represented the year of the alleged incident when he filed his complaint with the Human Rights Bureau or that he is mistaken in his letter and in the Complaint.

There is no provision in the NMHRA that permits a litigant to circumvent the grievance process by submitting a grievance letter to the subject of the complaint. Rather, the NMHRA unequivocally requires an aggrieved person to initiate the grievance process by filing a complaint with the human rights division within 300 days of the alleged discriminatory act. The only evidence of Plaintiff's attempt to satisfy this requirement (the Human Rights Bureau Questionnaire and the corresponding letter to Plaintiff) reflects that Plaintiff's attempt in September of 2018 to file a complaint pertaining to a Dollar Store incident that occurred in *May of 2017* was denied as untimely. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3rd ed.) (recognizing the apparently "well-settled" proposition "that when a disparity exists between [a] written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control"). Because Plaintiff has failed to demonstrate that he abided by the grievance procedure required in the NMHRA pertaining to the *May 2018* incident alleged in his complaint, Plaintiff's NMHRA claim must be dismissed for lack of subject matter jurisdiction. *Mitchell-Carr*, 980 P.2d at 70. If Plaintiff did, in fact, timely file a complaint regarding the May 2018 incident and can plausibly demonstrate

that he complied with the NMHRA grievance procedure, he may refile his NMHRA claim accordingly. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims." (italics omitted)). In sum, the Court recommends dismissing Plaintiff's NMHRA claim without prejudice pursuant to Rule 12(b)(1).

### B. Plaintiff's Prima Facie Tort Claim Should Be Dismissed Under Rule 12(b)(6)

#### 1. Legal Standards Governing Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the plaintiff's complaint "contain [s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must consider "the complaint as a whole, along with the documents incorporated by reference into the complaint," and must construe all well-pled allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015); *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1199 n.2 (10th Cir. 2016) (recognizing that in deciding a Rule 12(b)(6) motion, the court should resolve all reasonable inferences in favor of the plaintiff). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the

remaining [ ] factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015).

### 2. **The Allegations in Plaintiff's Complaint Do Not Plausibly State a Prima Facie Tort Claim**

Plaintiff's Complaint includes a prima facie tort claim arising from the incident at the Dollar Tree store. (Doc. 1-2 at 5-6.) The Court understands Plaintiff to be pleading prima facie tort as an alternative to his NMHRA claim. *See Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990) ("[P]rima facie tort may be pleaded in the alternative; however, if at the close of the evidence, plaintiff's proof is susceptible to submission under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort.").

"Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid traditional intentional tort categories." *Portales Nat'l Bank v. Ribble*, 75 P.3d 838, 840 (N.M. Ct. App. 2003). "The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." *Padwa v. Hadley*, 981 P.2d 1234, 1242 (N.M. Ct. App. 1999). Under New Mexico law then, to prevail in prima facie tort claim, a plaintiff must prove: (1) an intentional, lawful act—meaning that there is no other theory available to support recovery; (2) committed maliciously, with the intent to injure the plaintiff (but not necessarily solely intended to injure the plaintiff), (3) causing injury to the plaintiff, and (4) without justification for the injurious act. *Id.*; *Schmitz*, 785 P.2d at 735. However, because "not every intentionally caused harm deserves a remedy in tort," a court must balance the activity complained of against its justification and the severity of the injury. *Schmitz*, 785 P.2d at 734 (alteration omitted). Thus, where the basic elements of prima facie tort are satisfied, the "culpability of the actor's conduct is measured by looking at three factors: (1)

9

the nature and seriousness of the harm to the injured party[, (2)] the character of the means used by the actor, and [3] the actor's motive." *Beaudry v. Farmers Ins. Exch.*, 412 P.3d 1100, 1104 (N.M. 2018) (alterations omitted); *see Silverman v. Progressive Broad., Inc.*, 964 P.2d 61, 72 (N.M. Ct. App. 1998) (stating that a court must "balance [the d]efendant's malicious intent against the justification for the injurious act and the severity of the injury to determine whether a prima facie tort has been committed"). "When weighing the seriousness of the harm, physical, concrete harm is weighed more heavily than emotional . . . harm; when weighing the character of the means used, conduct offensive to society's concepts of fairness and morality favors liability; when weighing motive, the degree of malice is significant; and when weighing the interest promoted by the actor's conduct, the court must consider established privileges or rights." *Beaudry*, 412 P.3d at 1104.

### a. As a Matter of Law Plaintiff's Race-Based Discrimination Claim is Not Actionable Under a Theory of Prima Facie Tort

While Plaintiff alleges that Defendant's conduct constituted age-based and race-based discrimination, he cannot, as a matter of law, prevail in a prima facie tort claim based on race-based discrimination. "The commission of an intentional lawful act is the first element of a prima facie tort." *Silverman*, 964 P.2d at 71. Because the NMHRA makes it unlawful for a public accommodation to discriminate against a person based on race, NMSA 1978, § 28-1-7(F), Plaintiff cannot satisfy the "lawful act" element necessary to state a claim for prima facie tort by demonstrating that the female cashier "Audrey" discriminated against him based on his race. *See id.* (recognizing that where the defendant's alleged conduct constitutes unlawful discrimination, the conduct is not a "lawful act" required to satisfy the first element of prima facie tort). In sum, Plaintiff's claim that Defendant committed a prima facie tort by discriminating against him on the basis of his race should be dismissed for failure to state a claim. *Id.* (affirming dismissal of a

prima facie tort claim on the ground that the alleged conduct would violate Title VII, and would therefore "not constitute a lawful act necessary for a prima facie tort").

> b. **As Alleged, the Allegations in Plaintiff's Complaint Concerning Age Discrimination Do Not Permit Recovery Under Prima Facie Tort**

While Plaintiff's race-discrimination claim is precluded based on the NMHRA, the Court is not aware of any statutory provision barring a public accommodation from age-based discrimination. Age-based discrimination in public accommodation being an otherwise "lawful act," *Schmitz*, 785 P.2d at 731, the court considers whether the allegations in Plaintiff's complaint are otherwise sufficient to state a prima facie tort claim. The intent-to-injure element of prima facie tort may be satisfied by demonstrating that the defendant "[i]ntentionally acted with the certainty that injury will necessarily result[.]" *Id.* at 738. In other words, it is insufficient to show that that the defendant committed an intentional act that may result in an injury; instead, the plaintiff must prove "an actual intention to injure[.]" *Kitchell v. Pub. Serv. Co. of N.M.*, 972 P.2d 344, 348-49 (N.M. 1998).

Here, Plaintiff alleges that Audrey, a cashier and manager at the Dollar Tree store, "stared at him in anger" when he tried to give her cash for some of the items that he sought to purchase, that she yelled and screamed at him, and that she pointed at the front door while shouting that she was the manager and ordering Plaintiff to get out of the store for no reason other than her age-discriminatory bias against Plaintiff. Assuming the truth of these allegations, and indulging all reasonable inferences in Plaintiff's favor, Plaintiff has satisfied the second element of prima facie tort because Audrey intentionally yelled and screamed at Plaintiff in the presence of other shoppers, either intending to injure him or knowing that her behavior would certainly injure him. *Padwa*, 981 P.2d at 1242; *see Silverman*, 964 P.2d at 72 (holding the malice element to be satisfied by allegations that a plaintiff's former employer wrote a letter to

her current employer referring to the plaintiff "as a liar, a gossip, and out of control"); *Beavers v. Johnson Controls World Servs., Inc.*, 901 P.2d 761, 767 (N.M. Ct. App. 1995) (holding the malice element to be satisfied where the plaintiff's supervisor subjected her to "significant emotional distress" by, among other things, "ridiculing and demeaning her before other employees").

Plaintiff's allegations also satisfy the "injury" element of prima facie tort. In that regard, Plaintiff alleges that he was injured by Audrey's conduct insofar as he experienced "duress, humiliation and loss of dignity" (Doc. 1-2 at 4); he was denied the opportunity to shop in the store and was compelled to leave for fear that something else would go wrong (Doc. 1-2 at 7); and he was treated disrespectfully, and that all of these events occurred in the presence of other shoppers. (Id.; Doc. 14 at 1.) Finally, insofar as Plaintiff alleges that Audrey's actions arose in the course of a "simple transaction" during which he attempted to pay for the items that he had shopped for, he has satisfied the fourth element—an absence of justification for the injurious act.

Although the basic elements of prima facie tort are satisfied by the allegations in Plaintiff's Complaint, the Court's inquiry does not end there. The Court must balance Audrey's unjustified ill treatment of Plaintiff against the nature and seriousness of the harm to Plaintiff, the interests promoted by Audrey's conduct, the character and means of Audrey's conduct, and her motives. *Schmitz*, 785 P.2d at 739. In considering the nature of the plaintiff's harm, the Court is mindful that "[r]ecovery is limited to those cases in which the plaintiff's harm is of such a nature and seriousness that legal redress is appropriate," and emotional harm is weighed less heavily than "physical, concrete harm[.]" *Beavers*, 901 P.2d at 767 (alteration omitted). Also, "a serious harm to an interest less deserving of protection may be a more important factor in finding liability than a slighter harm to a more significant interest." *Id.*

From the allegations in the Complaint, the facts underlying Audrey's conduct—*i.e.* the interest (if any) that her treatment of Plaintiff was intended to promote her motives—to the extent that they were broader than age discrimination—are unknown. Thus, at this stage of the proceedings, the Court's consideration of the secondary balancing factors described above is limited to the nature of Plaintiff's harm balanced against the character and means of Audrey's age-discriminatory conduct toward him. It is indisputable that there is a significant societal and public-policy interest engendering a general prohibition of undue age-based discrimination. *See generally* NMSA 1978, Section 28-1-7(A) (prohibiting an employer from discriminating against an employee in terms of his or her employment on the basis of age unless it is "based on a bona fide occupational qualification or other statutory prohibition"); 29 U.S.C. Section 623(a) (prohibiting an employer from discriminating against an individual in terms of his or her employment "because of such individual's age"). And the fact that the NMHRA does not expressly prohibit age discrimination by a public accommodation toward its would-be customers does not diminish the significance of that interest under the circumstances alleged here. That said, Plaintiff's alleged harm does not rise to the level of seriousness contemplated by New Mexico courts in the context of a prima facie tort claim.

To provide context for this analysis, the Court notes that in *Beavers* the New Mexico Court of Appeals held that the mental harm suffered by the plaintiff satisfied the injury element of prima facie tort. There, the plaintiff's supervisor engaged in a course of offending conduct over several weeks that caused the plaintiff to suffer "acute mental distress sufficient to require her hospitalization for extended period and to necessitate continuing professional care and treatment." *Beavers*, 901 P.2d at 767-68. Among other things, the plaintiff's mental distress caused her to have conflict with her family members, to develop suicidal tendencies, and to have

13

difficulty going back to work for anyone else. *Id.* The extreme mental harm suffered by the plaintiff in *Beavers* stands in stark contrast to circumstances in which the plaintiff's allegations of mental harm did not constitute the level of injury actionable under a theory of prima facie tort. For example, in *Martinez v. Northern Rio Arriba Electric Cooperative, Inc.*, 51 P.3d 1164, 1170-71 (N.M. Ct. App. 2002), the court held that the harm experienced by the plaintiff—which included "feeling humiliated," by the defendant (her employer), and which was evidenced by an expert's opinion that the defendant's treatment of the plaintiff had been "emotionally difficult" for her did not support a prima facie tort claim. To further illuminate the standard by which mental or emotional injury is measured in this context, the Court considers the level of "emotional distress" required to prevail in a claim of intentional infliction of emotional distress.[7]

As described in the Restatement, and incorporated into New Mexico law, emotional distress, which "includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, [and] worry[,]" only gives rise to liability where it is "extreme." Restatement (Second) of Torts, § 46 cmt. j. To be actionable under tort law, distress must be so severe that a reasonable person could not be expected to endure it. *Trujillo v. N. Rio Arriba Elec. Co-op.*, Inc., 41 P.3d 333, 343 (N.M. 2001) (citing the Restatement (Second) of Torts, § 46 cmt. j). As posited in the Restatement,

> [c]omplete emotional tranquility is seldom attainable in this world and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

Restatement (Second) of Torts, § 46 cmt. j.

---

[7] Although not a direct analog, New Mexico appellate courts have rejected prima facie tort claims involving emotional or mental harm on the ground that a theory of prima facie tort cannot be used to circumvent the requisite elements of the tort of intentional infliction of emotional distress. *Padwa*, 981 P.2d at 1242-43; *Stock v. Grantham*, 964 P.2d 125, 136 (N.M. 1998); *see Martinez*, 51 P.3d at 1171 (relying on *Stock* to support a holding that the emotional difficulty that the plaintiff experienced did not support a claim for prima facie tort).

Borrowing the emotional-distress standard from the context of the tort of intentional infliction of emotional distress, and viewing the allegations in the Complaint against the backdrop of *Beavers* and *Martinez*, the injury that Plaintiff suffered does not tip the balance in favor of Plaintiff in terms of stating a prima facie tort claim. As alleged, Plaintiff's injuries amounted to the following: he was, on one occasion, disrespected, humiliated, and suffered a loss of dignity when, in the presence of several other shoppers, Audrey yelled and screamed at him, forcing him to leave the Dollar Tree store without the items that he sought to purchase out of fear that something else would go wrong. (Doc. 1-2 at 4-6.) While Audrey's conduct is undoubtedly "offensive to society's concepts of fairness and morality" the injury that Plaintiff experienced as a result falls far short of emotional harm suffered by the plaintiff in *Beavers*. And, to the extent *Beavers* and *Martinez* may be viewed on a spectrum, Plaintiff's injury is more akin to the non-actionable injury discussed in *Martinez*. Although the humiliation, disrespect, and loss of dignity that Plaintiff suffered as a result of Audrey's age-based discrimination was undoubtedly distressing to him as it would be to any reasonable person, the allegations in the Complaint do not plausibly denote an occurrence so extremely distressing that a reasonable person could not be expected to endure it. Nor do the allegations in the Complaint suggest that Plaintiff, subjectively, experienced the effect of the incident intensely for an extended duration.[8] Restatement (Second) of Torts, § 46 cmt. j; *see Beavers*, 901 P.2d at 767 (reasoning that the injury factor weighed on balance in favor of the plaintiff who, having been hospitalized for two weeks following her supervisor's injurious conduct "was still suffering mental distress to a measurable degree at the time [her] case [went] to trial" four years later); *Martinez*, 51 P.3d 1170-71 (holding that humiliation and emotional difficulty that was not extreme did not support

---

[8] In his Reply, Plaintiff alleges that he could not sleep *on the night of the incident*. (Doc. 14 at 2.) Plaintiff does not allege or argue that he was affected by the incident for an extended duration.

an action in prima facie tort). Plaintiff's prima facie tort claim should be dismissed accordingly. *Beavers*, 901 P.2d at 767 (limiting recovery under a theory of prima facie tort to "cases in which the plaintiff's harm is of such a nature and seriousness that legal redress is appropriate").

### C. Plaintiff's Unfair Trade Practice Claim Should be Dismissed Under Rule 12(b)(6)

Plaintiff's Complaint references, but does not state a claim for, violation of the New Mexico Unfair Trade Practices Act, NMSA 1978, Section 57-12-1 through -26 (UPA). (Doc. 1-2 at 1.).

> In order to state a claim under the UPA, a complaint must contain allegations to the effect that: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007). Plaintiff's Complaint is devoid of allegations to this effect. To the extent that Plaintiff sought in his Complaint to state a UPA claim, such claim should be summarily dismissed without prejudice under Rule 12(b)(6) for failure to state a claim.

### III. Plaintiff's Motion to Dismiss Should be Denied as Moot

In Plaintiff's Motion to Dismiss, filed five months after Defendant's Motion, Plaintiff seeks dismissal of his claims without prejudice or, alternatively, an order remanding this matter to state court. (Doc. 18.) This pleading variously responds to Defendants' argument—fully addressed in the preceding section of this recommendation—that Plaintiff failed to exhaust his administrative remedies; summarizes and reiterates the basis of Plaintiff's Complaint; and seeks to divest the Court of subject matter jurisdiction over this matter by alleging a reduced amount-in-controversy of $75,000.00. (Doc. 18.) The Court, having already addressed the merits of

Plaintiff's Complaint, including the issue of whether Plaintiff exhausted his administrative remedies, shall not engage in a redundant reanalysis thereof. For the reasons stated earlier, Plaintiff's Complaint should be dismissed for failure to state a claim. Should the Court adopt this recommendation, Plaintiff's Motion to Dismiss will be rendered moot, and it should be denied accordingly.

Furthermore, granting Plaintiff's Motion to Dismiss under the circumstances of this case would run contrary to the principle that "a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996). Defendant's motion to dismiss was pending for five months before Plaintiff sought to dismiss his claims. *Id.* (stating that a plaintiff's "excessive delay" in seeking dismissal of his complaint, and the pendency of a dispositive motion weigh against granting a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 41(a)(2)). Plaintiff having failed to provide another reason for seeking to dismiss his claim without prejudice, is ostensibly doing so for the sole purpose of avoiding a disposition on the merits of his claim in this Court so that he may pursue his claims in the state court. *Id.* (stating that a plaintiff's insufficient explanation of his need to dismiss his complaint weighs against granting such a motion). Were the Court to grant Plaintiff's motion to dismiss, Defendant would be prejudiced by having uselessly expended time and resources seeking dismissal on the merits, whereas Plaintiff would be free to file a new complaint without the benefit or the preclusive effect of the Court's analysis of his claims as they are presently stated. *Id.* (stating that "legal prejudice" to the defendant is a factor that the court should consider in determining whether grant a plaintiff's motion to dismiss his complaint). In sum, while the

Court recommends denying Plaintiff's Motion to Dismiss as moot, it should, in the alternative, be denied on the merits.

Finally, to the extent that Plaintiff seeks to effect dismissal or remand of this matter to state court by newly alleging a reduced amount in controversy, Plaintiff's Motion is premised on a misapprehension of the law. Defendant properly, and pursuant to its statutory right to do so, removed this case to federal court based on the parties' diversity, and Plaintiff's claim of damages in the amount of $135,000. *See* 28 U.S.C. § 1332 ("[The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum . . . . of $75,000 . . . and is between . . . citizens of different states[.]"). The determination of whether the amount in controversy requirement is satisfied is based on the amount in controversy claimed *at the time that notice of removal is filed in federal court*. Charles A. Wright, et al., Federal Practice and Procedure § 3702.1. "Once jurisdiction has attached, [an attempt to] subsequently defeat it by reducing the amount in controversy [is] unavailing." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998); *see St Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("The claim, whether well or ill-founded in fact, fixes the right of the defendant to remove and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election."). "If the plaintiff could . . . reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice." *St Paul Mercury Indem. Co*, 303 U.S. at 294. The amount-in-controversy requirement having been satisfied at the time of removal, Plaintiff's attempt to divest this Court of jurisdiction by now alleging a reduced amount in controversy is legally ineffective.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends: (1) that the Motion and Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 5) be **GRANTED**; and (2) that "Plaintiff's Motion to Dismiss Without Prejudice or, in the Alternative, to Transfer Plaintiff's Case to State District Court. Plaintiff Also Alleges a Willingness to Reduce Damages to Seventy-Five Thousand Dollars" (Doc. 18.) be **DENIED** as moot.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**